Filed 5/25/21  P. v. Rangel CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B302169 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA070627) |
| v. | |
| MYRA RANGEL | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

Appellant Myra Rangel was convicted of attempted murder and conspiracy to commit murder in 2013. Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) amended the felony murder rule; eliminated the natural and probable consequences doctrine as it relates to murder; and enacted Penal Code section 1170.95,[1] under which a person convicted of murder under the felony murder rule or natural and probable consequences doctrine may petition the sentencing court to vacate the conviction and resentence on any remaining counts. Appellant filed a petition for resentencing under section 1170.95 in March 2019. After appointing counsel for appellant, receiving briefing, and hearing argument, the trial court denied the petition on the ground that appellant's convictions were outside the scope of section 1170.95.

Appellant contends that her convictions are within the scope of section 1170.95 because SB 1437 abrogated the natural and probable consequences doctrine as it applies to attempted murder and conspiracy to commit murder, and her convictions may have been based on that now-invalid doctrine. We disagree and affirm.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

## BACKGROUND

### I.     Underlying Convictions[2]

Appellant and three codefendants, Horacio Gonzalez, Cristian A. Adame, and Samantha Rodriguez, were charged in a 17-count information with conspiracy to commit murder (§§ 182, subd. (a)(1) & 187, subd. (a)), two counts of attempted premeditated murder (§§ 187, subd. (a) & 664), and shooting at an occupied vehicle (§ 246). (*People v. Gonzalez, supra*, 2015 Cal. App. Unpub. LEXIS at p. *3.) The information alleged that these offenses, all of which occurred on or between March 15 and 16, 2010, were committed for the benefit of or in association with a criminal street gang (§ 186, subds. (b)(1)(C) & (b)(4)), and that a principal personally and intentionally discharged a firearm and caused great bodily injury during their commission (§ 12022.53, subds. (d) & (e)(1)).[3] (*Ibid.*)

All four codefendants were tried jointly by a single jury. (*People v. Gonzalez, supra*, 2015 Cal. App. Unpub. LEXIS at p.

---

[2]We granted appellant's request to take judicial notice of the case file in her direct appeal, *People v. Gonzalez*, No. B249598, which includes our prior opinion, *People v. Gonzalez* (Oct. 26, 2015, B249598) 2015 Cal. App. Unpub. LEXIS 7643 [nonpub. opn.]. The facts and procedural background, which are not disputed, are largely drawn from the prior opinion.

[3]The remaining 13 counts of the information charged Gonzalez and Adame with murder (§ 187, subd. (a)), attempted premeditated murder (§§ 187, subd. (a) & 664), assault with a semiautomatic firearm (§ 245, subd. (b)), and street terrorism (§ 186.22, subd. (a)), along with similar gang and firearm enhancements. (§§ 186.22, subds. (b)(1)(C) & (b)(4), 12022.5, 12022.53, subd. (d), 12022.7, subd. (a)). (*Id.* at p. *4.) The two incidents giving rise to these charges occurred on or about March 23 and 24, 2010. (*Ibid.*)

*4.)  As relevant here, the jury heard evidence that Gonzalez and Adame belonged to and appellant and Rodriguez associated with street gangs in Pacoima.  On the night of March 15, 2010, victim Sergio Abrego, who belonged to a rival gang and had insulted appellant in the past, called appellant's roommate's cellphone. Another female gang associate, Alexis Garcia, answered the phone and arranged to meet Abrego at a nearby intersection. Appellant, codefendants, and Garcia then drove to the intersection in two separate vehicles; Gonzalez and Adame were in one car, and appellant and the others were in the second. During the drive, Garcia heard appellant using a cellphone and asking questions such as, "Are you coming?" Appellant also directed Rodriguez to make calls on the cellphone; Rodriguez, too, made statements like, "they were on their way."  (See *id*. at pp. 6-9.)

When the group was near the appointed intersection, appellant directed Rodriguez and Garcia to get out of the car. Rodriguez still had the cell phone, and Garcia heard her asking, "Are you here yet?"  A van with two people inside drove by, and Garcia heard Rodriguez say, "That's them."  Garcia and victim Abrego, who was the passenger in the van, testified that they saw codefendant Adame's car drive by and fire numerous shots at the van. Abrego was shot in both legs but survived the attack; the driver of the van was not hit.  After the shooting, the second car returned to the area and picked up Garcia and Rodriguez. Appellant laughed and asked Rodriguez "if they got him." (See *People v. Gonzalez, supra*, 2015 Cal. App. Unpub. LEXIS at pp. *9-*11.)

The jury found appellant and codefendants guilty of the charged crimes and found the gang and firearm enhancements

4

true. (*People v. Gonzalez, supra,* 2015 Cal. App. Unpub. LEXIS at p. *5.) The court sentenced appellant to 25 years to life on the conspiracy to commit murder count, plus a consecutive term of 25 years to life for the firearm enhancement; and a consecutive life term on one of the attempted murder counts, plus a consecutive term of 25 years to life for the firearm enhancement. (*Id.* at pp. *169-*170.) The court imposed and stayed sentences on the other counts pursuant to section 654. (*Ibid.*)

On direct appeal, appellant argued that her convictions should be reversed because her counsel rendered ineffective assistance by failing to seek severance of her case and because the trial court failed to instruct on the defense of duress. (*People v. Gonzalez, supra,* 2015 Cal. App. Unpub. LEXIS at pp. *150-*157 [duress instruction], *158-*169 [ineffective assistance].) She also contended that her overall sentence constituted cruel and unusual punishment, and that the firearm enhancements in particular violated her equal protection and due process rights. (*Id.* at pp. *169-*175 [cruel and unusual punishment], *176-*179 [enhancements].) We rejected her arguments and affirmed her convictions and sentence. (*Id.* at p. *2.)

Appellant filed a petition for review in the California Supreme Court. The Court denied the petition on February 17, 2016.

## II. Section 1170.95 Petition

Appellant filed a petition for resentencing pursuant to section 1170.95 on March 12, 2019. She asserted that she had been convicted of first or second degree murder pursuant to the felony murder rule or natural and probable consequences doctrine, and that she could not now be convicted of first or second degree murder because of the changes SB 1437 made to

5

sections 188 and 189 of the Penal Code. Appellant requested the appointment of counsel.

Appellant attached to her petition a declaration from the attorney who represented her on direct appeal, who is also her counsel in the instant appeal. Counsel asserted that appellant was eligible for relief because the prosecution relied on the natural and probable consequences doctrine to convict appellant of attempted murder and conspiracy to commit murder.

The court appointed a different attorney to represent appellant in the section 1170.95 proceedings. The prosecution subsequently filed a written opposition to appellant's petition. The prosecution argued that appellant was ineligible for relief under section 1170.95 because she was not convicted of murder. It further argued that her convictions required the jury to find that she acted with the specific intent to kill and were not based on either the felony murder theory or natural and probable consequences doctrine.[4] Appellant did not file a reply in support of her petition.

The court called the matter for hearing on September 20, 2019. Both sides submitted on the written record. The court denied the petition, finding that appellant "does not fall within the parameters of 1437."

Appellant timely appealed.

## DISCUSSION

Appellant contends that SB 1437 eliminated the natural and probable consequences doctrine for murder, and therefore "logically" did so for attempted murder as well. She further

---

[4]The prosecution also argued that SB 1437 and section 1170.95 were unconstitutional. The Attorney General now concedes that SB 1437 and section 1170.95 are constitutional.

6

contends that SB 1437 requires vacation of her conviction for conspiracy to commit murder, because the jury could have applied the natural and probable consequences doctrine and was not required to find she acted with the intent to kill. We review de novo the trial court's interpretation and application of the statutes enacted pursuant to SB 1437. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811.)

The Legislature enacted SB 1437 "to amend the felony-murder rule and the natural and probable consequences doctrine, *as it relates to murder*, to ensure that *murder liability* is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), emphasis added.) SB 1437 amended section 188 to require a principal in a crime to act with malice aforethought *to be convicted of murder*, and to prohibit the imputation of malice to a person based solely on his or her participation in a crime. (§ 188, subd. (a)(3), emphasis added.) It similarly amended section 189 to provide that a participant "in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs *is liable for murder* only if" he or she "was the actual killer"; "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in murder of the first degree": or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), emphasis added.) All of these statutory changes refer explicitly and exclusively to murder.

SB 1437 also added section 1170.95, which allows persons "convicted of felony murder or murder under a natural and

7

probable consequences theory" to petition the sentencing court to vacate their "murder conviction" under certain conditions. (*Id.*, subd. (a).) It likewise provides that, if certain criteria are met, "the court shall hold a hearing to determine whether to vacate the murder conviction," and that the parties may waive such a hearing by stipulating that the petitioner "is eligible to have his or her murder conviction vacated and for resentencing." (*Id.*, subds. (d)(1), (d)(2).) By its plain language, our starting point for statutory interpretation, section 1170.95 applies only to murder convictions and provides no relief from convictions for other offenses. (See *People v. Gonzales* (2018) 6 Cal.5th 44, 50.)

As appellant recognizes, many courts have come to this conclusion with respect to attempted murder. (See, e.g., *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103-1110, review granted Nov. 13, 2019, S258175; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753-760, review granted Nov. 26, 2019, S258234; *People v. Love* (2020) 55 Cal.App.5th 273, 279, review granted Dec. 16, 2020, S265445.) We agree with the analyses of these well-reasoned cases.

Appellant urges us to follow three cases holding that SB 1437's amendments to section 188 necessarily abrogated the natural and probable consequences doctrine as it applies to attempted murder, *People v. Larios* (2019) 42 Cal.App.5th 956, review granted Feb. 26, 2020, S259983 (*Larios*), *People v. Medrano* (2019) 42 Cal.App.5th 1001, review granted Mar. 11, 2020, S259948 (*Medrano*), and *People v. Sanchez* (2020) 46 Cal.App.5th 637, review granted June 10, 2020, S261768 (*Sanchez*). Yet even these cases are of no aid to appellant. *Larios*, *supra*, 42 Cal.App.4th at pp. 969-970 holds that although SB 1437 bars the use of the natural and probable consequences

doctrine to obtain an attempted murder conviction going forward, "the relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder." *Medrano*, *supra*, 42 Cal.App.5th at pp. 1017-1018, reaches the identical conclusion. It further holds that defendants whose convictions "were not yet final when these amendatory statutes lessening punishment took effect" may obtain relief on direct appeal. (*Id.* at p. 1019.) *Sanchez*, *supra*, 46 Cal.App.5th at pp. 642-644 similarly holds that "SB 1437 abrogates the natural and probable consequences doctrine in attempted murder prosecutions. This conclusion applies retroactively on direct appeal." Appellant's direct appeal concluded years ago; despite her assertion to the contrary, her convictions have long been final. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [judgment is final when the time for petitioning for a writ of certiorari in the United States Supreme Court has passed]; Rules of the United States Supreme Court, Rule 13(1) ["A petition for a writ of certiorari seeking review of a judgment of a lower state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."].) Her attempted murder conviction cannot be vacated under section 1170.95.

Nor can her conviction for conspiracy to commit murder. The parties agree that a conviction for conspiracy to commit murder requires proof that the defendant had the intent to kill and cannot be based on a theory of implied malice. (*People v. Swain* (1996) 12 Cal.4th 593, 607.) Indeed, we held in appellant's direct appeal—in response to an argument made by codefendant Rodriguez, not appellant—that the trial court had erred by including "conspiracy to commit murder within the ambit of the

9

natural and probable consequences doctrine." (*People v. Gonzalez, supra*, 2015 Cal. App. Unpub. LEXIS 7643, at p. *149.) We also held, however, that the error "was cured by court's proper instruction that the conspiracy count required the People to prove defendants agreed and intended to 'intentionally and unlawfully kill' and 'had an agreement and intent to commit murder.' Additionally, the People repeatedly invited the jury to acquit Rodriguez *and Rangel* on the conspiracy count if it applied the natural and probable consequences doctrine. The jury's guilty verdict on the conspiracy count—and its findings that the attempted murders were willful and premeditated and not simply an escalated consequence of a target offense—indicates that it rejected the natural and probable consequences theory in favor of the People's lead theory of aiding and abetting." (*Ibid.*, emphasis added.) We thus expressly held that appellant's conviction for conspiracy to commit murder rested upon an aiding and abetting theory, not the impermissible natural and probable consequences theory.

Even if the statutory changes effected by SB 1437 applied to offenses other than murder, our prior holding that appellant was convicted as a direct aider and abettor forecloses relief under section 1170.95. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138-1139, review granted Mar. 18, 2020, S260598.) Our determination that appellant was convicted under an aiding and abetting theory refutes her conclusory assertions that the prosecutor argued, and the jury may have relied upon, the natural and probable consequences doctrine to convict her of conspiracy to commit murder. While the trial court must assume all facts in a section 1170.95 petition are true and should not evaluate their credibility, "it need not credit factual assertions

10

that are untrue as a matter of law." (*People v. Drayton* (2020), 47 Cal.App.5th 965, 980.)

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.